UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM THOMAS MASSIE<br>4352 Hononegah Road<br>Roscoe, Illinois  61073<br><br>          Plaintiff,<br>and<br><br>DUNNIE RICHARD TUCK<br>557 West Lake Shore Drive<br>Carriere, Mississippi  39426<br><br>          Plaintiff,<br>and<br><br>DONALD RAYMOND MCCLARREN<br>821 Edison Avenue<br>Lewisburg, Pennsylvania 17837<br><br>          Plaintiff,<br>and<br><br>ROSE BUCHER, Individually and as the duly<br>appointed Personal Representative of the<br>ESTATE OF LLOYD BUCHER,<br>DECEASED.<br>16296 Rostrata Hill Road<br>Poway, California 92064<br><br>          Plaintiff.<br><br>     vs.<br><br>THE GOVERNMENT OF THE<br>DEMOCRATIC PEOPLE'S REPUBLIC OF<br>KOREA, its Ministries, Agencies and<br>Instrumentalities<br>Central District<br>Pyongyang, North Korea<br><br>          Defendants | Court No. 1:06 CV00749(HHK) |

## **PLAINTIFFS' FIRST AMENDED COMPLAINT**

NOW COME the Plaintiffs, WILLIAM THOMAS MASSIE, DUNNIE RICHARD

TUCK, DONALD RAYMOND MCCLARREN, and ROSE BUCHER, Individually and as

Personal Representative of the ESTATE OF LLOYD BUCHER, DECEASED, and complaining of the Defendants, THE GOVERNMENT OF THE DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA, its Ministries, Agencies and Instrumentalities, and state as follows:

## PARTIES

1. Plaintiff, WILLIAM THOMAS MASSIE (hereinafter "Massie"), is a United States citizen and was and is a domiciliary of the State of Illinois, who was tortured and held hostage beginning on January 23, 1968 for a period of 11 months by THE GOVERNMENT OF THE DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA, its Ministries, Agencies and Instrumentalities (hereinafter collectively referred to as "North Korea").

2. Plaintiff, DUNNIE RICHARD TUCK (hereinafter "Tuck"), is a United States citizen and is a domiciliary of the State of Mississippi, who was tortured and held hostage beginning on January 23, 1968 for a period of 11 months by North Korea. At the time he was tortured and held hostage, Tuck was domiciled in the Commonwealth of Virginia.

3. Plaintiff, DONALD RAYMOND MCCLARREN (hereinafter "McClarren"), is a United States citizen and was and is a domiciliary of the Commonwealth of Pennsylvania, who was tortured and held hostage beginning on January 23, 1968 for a period of 11 months by North Korea.

4. Plaintiff, ROSE BUCHER (hereinafter "Rose Bucher") is a United States citizen and was and is a domiciliary of the State of California. Rose Bucher is the widow of Commander Lloyd Bucher and is the duly appointed Personal Representative of the ESTATE OF LLOYD BUCHER, DECEASED.

5. Plaintiff's decedent, Commander LLOYD BUCHER (hereinafter "Commander Bucher"), was, at all times prior to his death on January 28, 2004, a United States citizen and was

a domiciliary of the State of California. Commander Bucher was tortured and held hostage beginning on January 23, 1968 for a period of 11 months by North Korea.

6. Defendant, North Korea, is a foreign sovereign whose activities as complained of herein were outside the scope of the immunity provided by the Foreign Sovereign Immunities Act, specifically pursuant to 28 U.S.C. § 1605(a)(7) and by determination of the Secretary of State, 53 Fed. Reg. 3477 (Feb. 5, 1988).

## JURISDICTION

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330 and pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7) .

8. Venue lies in this court pursuant to 28 U.S.C. § 1391(f)(4).

9. North Korea was designated as a state sponsor of terrorism by the Secretary of State pursuant to § 6(j) of the Export Administration Act of 1979 (50 U.S.C. 2405(j)) or § 602(a) of the Foreign Assistance Act of 1961, 922 U.S.C. § 2371) in part as a result of the acts herein described and for which claim is being made by the Plaintiffs. *Notice, Determination Pursuant to Section 6(j) of the Export Administration Act of 1979; North Korea*, 53 Fed. Reg. 3477 (Feb. 5, 1988).

## STATEMENT OF FACTS COMMON TO ALL COUNTS

10. On or about January 23, 1968, while on patrol in waters off the coast of North Korea, the naval vessel, USS Pueblo, came under unprovoked and unlawful attack by military elements of North Korea including two submarine chasers, four torpedo boats, and two MIG-21 fighter jets.

11. These military elements of North Korea fired upon the USS Pueblo, forcing her to stop, be captured and then boarded by North Korean sailors or other officials or agents of North Korea.

12. Upon capture of the USS Pueblo by North Korea, the Pueblo's crew members were blindfolded, beaten, threatened, prodded with bayonets and forcibly kidnapped from the ship.

13. Over the course of the next 11 months, North Korea illegally held the crew members of the USS Pueblo hostage inside North Korea, while subjecting them to mental and physical torture including beatings, batteries, threats of death, mock executions, food and sleep deprivations, imprisonment under extreme and physically abusive conditions, attempted brainwashing, and similar extreme and outrageous acts. The tortious acts of the Defendants against the Plaintiffs herein were committed as acts of terrorism and proximately caused Plaintiffs to suffer injuries as follows:

   a. They sustained severe and permanent physical injuries;

   b. suffered and continue to suffer from Post Traumatic Stress Disorder;

   c. were deprived of basic human rights in that they were deprived of their freedom for a period of 11 months preventing them from attending to their normal and customary activities;

   d. have suffered and continue to suffer from disability and disfigurement;

   e. have suffered a loss of wages, income, and earning potential;

   f. have incurred medical expenses on account of their injuries; and

   g. suffered and continue to suffer great pain and agony of mind and body.

14. At all relevant times, North Korea provided material resources and support in the form of funding, training, and direction, to its military forces or individuals carrying out the terrorist acts herein complained of.

## COUNT I

### (Torture – Against All Defendants)

15. Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully restated herein.

16. Plaintiffs were members of the crew of the USS Pueblo as described herein at the time of its unlawful capture by North Korea.

17. Plaintiffs were subjected to the tortious conduct of North Korea in being tortured as described herein.

18. The definition of "torture" under the FSIA is derived from §3 of the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (March 12, 1992), codified at 28 U.S.C. § 1350 (note). Section 3(b)(1) of the TVPA defines "torture" to include:

> any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind.

19. Torture is a severe form of battery which, under California law, "is any intentional, unlawful and harmful contact by one person with the person of another." *Ashcraft v. King,* 228 Cal. App. 3d 604, 611 (1991). Specifically, the tort of civil battery consists of the following three elements:

(1) the defendant intentionally did an act that resulted in a harmful or offensive contact with the plaintiff;

(2) the plaintiff did not consent to the contact;

(3) the contact caused injury, damage, loss or harm to the plaintiff. *Id.*

20. In *Priest v. Rotary,* 634 F. Supp. 571, 584 (N.D. Cal. 1986), the district court held that "[u]nder California law, when a person is injured by the tortuous acts of another, she is entitled to recover from the tortfeasor an amount that will compensate for all the detriment proximately caused by the tortuous acts."

21. It is also well established in California that the damages recoverable by the victim of a tortuous act may also include recovery for "the grief, anxiety, worry, mortification, and humiliation which one suffers by reason of physical injuries." *Merrill v. Los Angles Gas & Elec. Co.,* 158 Cal. 499, 512 (1910).

22. An essentially identical cause of action for battery is available under the laws of the Commonwealths of Pennsylvania and Virginia and the State of Illinois.

23. Under federal common law, and supported by state and international law and the common law of torts, Plaintiffs can recover for torture as stated in the complaint.

## COUNT II

### (Assault And Battery – Against All Defendants)

24. Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully restated herein.

25. The named Defendants in this action are responsible for numerous acts of assault and battery upon Plaintiffs during their arrest, imprisonment, and torture.

26. Under California law and under the laws of the State of Illinois and the Commonwealths of Pennsylvania and Virginia, a civil action for assault is based upon actions or inactions by a defendant that place the person in fear of personal harm. *Kiseskey v. Carpenters' Trust for Southern California* (1983) 144 Cal.App.3d 222, 232 ("[t]he tort of assault is complete when the anticipation of harm occurs" and the tort of civil battery consists of the following three elements, (i) the defendant intentionally did an act that resulted in a harmful or offensive contact with the plaintiff; (ii) the plaintiff did not consent to the contact; (iii) the contact caused injury,

damage, loss or harm to the plaintiff) (citing *Ashcraft v. King, supra,* 228 Cal. App. 3d at 611). *See also, Cohen v. Lit Brothers*, 166 Pa. Super. 206, 209 (Pa. Super. Ct. 1950) (Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person); *Koffman v. Garnett,* 265 Va. 12, 16 (Va. 2003) (the tort of "battery" is an unwanted touching which is neither consented to, excused, nor justified, whereas the tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery); *Cohen v. St. Joseph Memorial Hospital, Inc.*, 648 N.E. 2d 329, 332 (Ill. App. 5 Dist., 1995) (an actor commits a battery if he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and a harmful contact with the person of the other directly or indirectly results) (quoting Restatement (Second) of Torts, § 13 (1965)); *Parrish by Bowker v. Donahue*, 443 N.E. 2d 786, 788 (Ill. App. 3 Dist. 1982) (battery is the "willful touching of the person of another or a successful attempt to commit violence on the person of another," whereas assault is the "intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented").

27. In addition, federal common law takes an essentially identical position. *See* Restatement (Second) of Torts §§ 13, 21, and 27.

28. Plaintiffs are entitled to recover for the multiple assaults and batteries that were committed by Defendants during the course of eleven months between January 23, 1968 and December 23, 1968.

## COUNT III

### (False Imprisonment – Against All Defendants)

29.     Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully restated herein.

30.     The named Defendants in this action are responsible for the false imprisonment of Plaintiffs. At the time that the USS Pueblo and the Plaintiffs came under an unprovoked and unlawful attack by military elements of North Korea, they were operating in international waters beyond the boundaries of North Korea.

31.     Having kidnapped them by forcibly removing them from their ship, Plaintiffs were unlawfully detained and held against their will and without their consent for a period of eleven months.

32.     California, Pennsylvania, Illinois and Virginia provide a cause of action for false imprisonment as alleged in the instant complaint.  *Lincoln v. Grazer,* 329 P.2d 928, 930 (Cal.Ct. App. 1958) (a false imprisonment action can still be maintained if "the defendant unlawfully detains the [plaintiff] for an unreasonable period of time" after an otherwise legal seizure or arrest.)  *See also, Molko v. Holy Spirit Ass'n,* 762 P.2d 46, 63 (Cal. 1988) (false imprisonment is defined as the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short"); *Fagan v. Pittsburgh Terminal Coal Corporation,* 299 Pa. 109 (Pa. 1930) (elements of false imprisonment in Pennsylvania are the detention of another person and the unlawfulness of such detention); *Ross v. Mauro Chevrolet*, 861 N.E. 2d 313, 317 (Ill. App. 1 Dist. 2006) (must show that plaintiff was restrained or arrested by the defendants and that the defendants acted without having reasonable grounds to believe that an offense was committed by the plaintiff) (quoting *Reynolds v. Menard, Inc.*, 850 N.E. 2d 831 (Ill. App. 1 Dist. 2006); *Russell v. Kinney Contractors, Inc.*, 795 N.E. 2d 340, 347 (Ill. App. 5 Dist. 2003) (False imprisonment requires unreasonable or unlawful restraint of personal liberties

against one's will, caused or procured by the defendant, and that the defendant actually or legally intended the restraint) (citing *Arthur v. Lutheran General Hospital, Inc*., 692 N.E. 2d 1238-1243 (Ill. App. 1 Dist. 1998); *Zayre of Virginia, Inc. v. Gowdy*, 147 S.E. 2d 710, 713 (Va. 1966) (False imprisonment is restraint of one's liberty, or the reasonable apprehension of forced restraint of one's liberty, without any sufficient cause, but does not require a showing of confinement in jail or placement in the custody of an officer, or that the defendant acted with malice, ill will or with the slightest wrongful intention) (citing *Montgomery Ward & Co., v. Wickline*, 50 S.E. 2d 387 (Va. 1948))

33. Federal common law and a number of federal statutes (including the Federal Tort Claims Act) also provide a cause of action for false imprisonment, and § 1606 of the FSIA attaches liability to a foreign state "in the same manner and to the same extent as a private individual under like circumstances."

34. Plaintiffs' complaint alleges Plaintiffs were falsely imprisoned by Defendants, and pursuant to the FSIA, federal common law and state law, this cause of action can proceed against all Defendants.

## COUNT IV

### (Intentional Infliction of Emotional Distress– Against All Defendants)

35. Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully restated herein.

36. The named Defendants in this action are responsible for the acts described above, and Plaintiffs are entitled to recover for the mental anguish from the loss of a decedent, inflicted upon them at the hands of the named Defendants.

37. California law provides a claim for intentional infliction of emotional distress where a plaintiff can satisfy the following elements: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3)

severe emotional suffering and (4) actual and proximate causation of the emotional distress." *See Agarwal v. Johnson,* 25 Cal. App. 3d 932, 946 (1979), overruled on other grounds in *White v. Ultrimar,* 21 Cal. App. 4th 563, 574 n.4 (1999).  Similar relief is recognized by Illinois and Virginia.  *Reilly v. Wyeth*, 876 N.E. 2d (740, 755 (Ill. App. 1 Dist., 2007) (must be pled with specificity and allege that the conduct 1)was truly extreme and outrageous, 2) that the actor either intended that his conduct inflict severe emotional distress, or knew that there was a high probability that the conduct would cause severe emotional distress, and 3) that the conduct, in fact, caused severe emotional distress) (quoting *Welsh v. Commonwealth Edison Co.*, 713 N.E. 2d 679, 684 (Ill. App. 1 Dist., 1999)); *Ogunde v. Prison Health Service, Inc.*, 645 S.E. 2d 520, 526 (Va. 2007) (a plaintiff must allege that the wrongdoer's conduct was intentional or reckless, the conduct was outrageous or intolerable, there was a causal connection between the wrongdoer's conduct and the resulting emotional distress, and that the resulting emotional distress was severe) (quoting *Sanchez v. Medicorp Health Systems*, 618 S.E. 2d 331, 333 (Va. 2005)).

38.   While Pennsylvania has not expressly recognized a cause of action for intentional infliction of emotional distress, the courts have cited the Restatement (2d) of Torts §46(2) as setting for the minimum elements necessary to sustain such a cause of action. *Taylor v. Albert Einstein Medical Center*, 754 A.2d 650, 652 (Pa.2000), citing, *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987).

39.   In *Cervantez v. J.C. Penny Co.,* 24 Cal. App. 3d 579, 593 (1979), the court cited to the Restatement (Second) of Torts §6, Comment d., and held that in order for defendant's conduct to be considered "outrageous," it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."

40.   Under California law, damages for intentional infliction of emotional distress may be recovered for both economic losses, which include "[r]easonable compensation for any

financial loss suffered by the plaintiff which was proximately caused by emotional distress," and non-economic losses such as damages for "humiliation, anxiety, and mental anguish." *Agarwal v. Johnson, supra,* 25 Cal. App. 3d at 953.

41.     At all times herein relevant Rose Bucher was the lawful spouse of Commander Bucher. Commander Bucher died on January 28, 2004. During his lifetime, Commander Bucher had a cause of action for the injuries and damages as alleged herein, which cause of action survives pursuant to state law and is brought by the Plaintiff, Rose Bucher, the Personal Representative of the Estate of Lloyd Bucher, Deceased. California law and federal common law recognize a cause of action by immediate family members for infliction of emotional distress where the parties were members of the victim's household and immediate family members.

42.     Similarly, the State of Illinois and the Commonwealths of Pennsylvania and Virginia recognize the cause of action for the intentional infliction of emotional distress.

## COUNT V
### (Loss Of Solatium - Against All Defendants)

43.     Plaintiffs re-allege and incorporate by reference the allegations set forth above as if fully restated herein.

44.     Commander Bucher was a member of the crew of the USS Pueblo as described herein at the time of its unlawful capture by North Korea.

45.     At all times herein relevant Rose Bucher was the lawful spouse of Commander Bucher. The tortuous conduct of North Korea proximately caused Rose Bucher to lose and be deprived of the services, support, consortium, affection, companionship, solatium of and with her husband, Lloyd Bucher.

46.     The tortuous conduct of North Korea proximately caused all Plaintiffs to experience severe emotional distress, literally, terror.

47. This Court has recognized the cause of action for loss of solatium under the federal common law by relying upon the Second Restatement of Torts § 46 (1986) ("one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. … All acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror, in their targeted audience." *Stethem v. Islamic Republic of Iran,* 201 F. Supp. 2d 78, 89 (D.D.C 2002).

48. The terrorist acts of the Defendants herein were intentional, malicious, and performed deliberately to injure, damage, and harm the crew members of the USS Pueblo and Rose Bucher such that the Defendants should be subjected to punitive damages to punish said Defendants and to deter them and others from committing such acts in the future.

## VI.

### Prayer For Relief

49. The Antiterrorism and Effective Death Penalty Act enables suits for monetary damages against foreign states for "money damages which may include economic damages, solatium, pain and suffering and punitive damages if the acts were among those described in 28 U.S.C. §1605(a)(7)." 28 U.S.C. § 1605, note. Because the acts complained of include person injury that was caused by acts of torture and hostage taking, money damages are authorized.

50. In addition, the FSIA has been interpreted to allow the recovery of punitive damages. The acts of the Defendants described above were intentional, malicious, and performed deliberately to injure, damage, and harm Plaintiffs such that the Defendants should be subjected to punitive damages to punish said Defendants and to deter them and others from committing such acts in the future.

WHEREFORE the Plaintiffs, WILLIAM THOMAS MASSIE, DUNNIE RICHARD TUCK, DONALD RAYMOND MCCLARREN AND ROSE BUCHER, Individually and as the

duly appointed Personal Representative of the ESTATE OF LLOYD BUCHER, DECEASED, respectfully request compensatory damages against the Defendants, THE GOVERNMENT OF THE DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA, its Ministries, Agencies and Instrumentalities, jointly and severally, in the amount of $25,000,000.00 and punitive damages in the amount of $300,000,000.00, plus all costs of suit herein.

Dated:  March 21, 2008                               Respectfully submitted,

                By:   Richard H. Streeter /s/
                   Richard H. Streeter
                   D.C. Bar No. 946053

                By:   Karen A. McGee /s/
                   Karen A. McGee
                   D.C. Bar No. 426552

                   BARNES & THORNBURG LLP
                   750 17th Street, NW, Suite 900
                   Washington, DC  20006
                   Telephone:   (202) 289-1313
                   Facsimile:    (202) 289-1330